IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MITCHELL MORROW,
#B76693,

Plaintiff,

vs.

JOHN BALDWIN,
S. A. GODINEZ,
MICHAEL P. RANDLE,
ROBERT MUELLER,
SUSAN WALKER,
DEBBIE KNAUER,
GLADYSE C. TAYLOR,
and JOHN/JANE DOE (Superintendents
of the Illinois Correctional Industry),

Defendants.                                  Case No. 18-cv-00908-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Mitchell Morrow, an inmate who is currently incarcerated at Centralia Correctional Center ("Centralia"), brings this civil rights action pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff claims that Defendants have been deliberately indifferent to the health risks posed by juice served to inmates in the Illinois Department of Corrections. (Doc. 3, pp. 3-7). Plaintiff claims that the juice contains high levels of benzene, a carcinogen that may also cause other health problems. *Id*.

1

According to the allegations, Defendants knowingly served Plaintiff this juice for more than ten years. (Doc. 3, pp. 3-7). During this same time period, he experienced hypertension, dizziness, headaches, and an irregular heartbeat, all of which he attributes to his involuntary consumption of benzene. *Id*. Plaintiff now brings Eighth Amendment claims against the defendants. (Doc. 3, pp. 7-8). He seeks declaratory judgment and monetary damages against these individuals. (Doc. 3, pp. 8-9).

Plaintiff originally filed this action with another inmate, Sean Wilkins. *Wilkins, et al. v. Baldwin, et al.*, No. 18-cv-00471-DRH (S.D. Ill.) ("original case"). Plaintiff Morrow's claims were severed into the instant action at his request on April 11, 2018. (Doc. 1, instant case). Although Wilkins and Morrow opted to proceed in separate actions, they relied on the same Complaint in support of their Eighth Amendment claims against the defendants. (Doc. 1, original case; Doc. 3, instant case). In addition, both Plaintiffs filed motions to consolidate their cases with a 2017 case filed by another Centralia prisoner-plaintiff, *Trainor v. Baldwin*, Case No. 17-cv-00369-DRH-DGW. (Doc. 7, original case; Doc. 6, instant case). All three cases address virtually the same claims.

This case is now before the Court for preliminary review of the Complaint (Doc. 3) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under these standards.

## The Complaint

In the Complaint, Plaintiff brings claims against the current and former Directors of the Illinois Department of Corrections ("IDOC"), including Director John Baldwin and former Directors S. A. Godinez, Michael P. Randle, and Gladyse C. Taylor. (Doc. 3, pp. 1-2). He also names Robert Mueller (Centralia's warden), Susan Walker (grievance officer), and Debbie Knauer (Administrative Review Board ("A.R.B.") official), as well as a number of unknown

3

Superintendents of the Illinois Correctional Industry ("ICI"), dietary managers, and wardens ("John/Jane Doe") who distributed contaminated juices to IDOC prisons. (Doc. 3, p. 2).

According to the allegations in the Complaint, the Food and Drug Administration issued a report in 1991 which indicated that benzene had been found in products containing a combination of sodium benzoate, ascorbic acid, citric acid, and/or erythorbic acid. (Doc. 3, p. 3). Because this combination of ingredients can produce benzene, the FDA "called on manufacturers to take measures to impede the formation of benzene in their products." *Id*. The Environmental Protection Agency reported that 5 parts per billion was the maximum acceptable level of benzene in drinking water. *Id.* Individuals exposed to higher levels of benzene, even for short periods of time, were at risk of developing anemia, nervous system disorders, and immune system depression. (Doc. 3, pp. 4-5). A report published by the Center for Disease Controls stated that exposure to benzene may cause dizziness, rapid or irregular heartbeat, vomiting, convulsions, sleepiness, and stomach irritation. (Doc. 3, pp. 4, 19-20).

In 2008, union members working within the IDOC raised concerns about benzene in drink products served to IDOC employees. (Doc. 3, p. 3). Defendants Randle, Godinez, Baldwin, Mueller, or the John/Jane Doe (wardens and dietary managers) never investigated these concerns. *Id*. Defendants John/Jane Doe (ICI Superintendents) continued to use the combination of ingredients listed above in beverages served to IDOC inmates. *Id.*

Plaintiff consumed the allegedly contaminated juices for more than ten years during his confinement at Menard, Lawrence, and Centralia Correctional Centers. (Doc. 3, p. 5). During this time period, he experienced hypertension, dizziness, headaches, and an irregular heartbeat, among other symptoms. (Doc. 3, pp. 5, 7). Plaintiff alleges that these symptoms may have resulted from his involuntary consumption of benzene. (Doc. 3, p. 5). He was diagnosed with and treated for several of these symptoms. *Id*. He still receives treatment for them. *Id*.

When Plaintiff learned about the risks associated with the excessive consumption of benzene, he filed a grievance seeking an investigation. (Doc. 3, pp. 3-5). Plaintiff asked Grievance Officer Walker to discontinue these beverages because they contain benzene, which is a carcinogen. (Doc. 3, p. 4). Although the grievance officer acknowledged that the juices contain ascorbic acid and sodium benzoate, a combination that produces benzene, she nevertheless denied the grievance and stated that the juices are "not harmful." *Id*. Warden Mueller affirmed her decision. *Id*. Plaintiff appealed the decision to Defendant Knauer, who denied the appeal. (Doc. 3, pp. 6).

Around the same time, the prison temporarily stopped serving juices containing the benzene-producing ingredients. (Doc. 3, pp. 5-6). However, the change was short-lived. *Id*. Defendants Mueller and John/Jane Doe (dietary manager) soon resumed the practice of serving the juices to inmates. *Id*.

Plaintiff claims that Defendants Baldwin, Godinez, Taylor, Randle, and all

John/Jane Does "have known since 1998 about the research on the formation of benzene through the combination of sodium benzoate and ascorbic acid, yet they failed to ensure that their products did not contain benzene." (Doc. 3, p. 6). The John/Jane Does deliberately manufactured and distributed the juice products to prisoners, despite knowing that they "would tend to contain unsafe benzene levels, placing prisoners at risk." *Id.* Defendants Baldwin, Godinez, Taylor, and Randle did nothing to address the health risks. *Id.* Plaintiff maintains that he was involuntarily exposed to benzene in the juices served with prison meals without any warning of the hazard. (Doc. 3, p. 7). His juice consumption allegedly created an unreasonable risk to his present and future health. *Id.*

Plaintiff asserts that Defendants' actions violated the Eighth Amendment. He seeks declaratory and monetary relief. (Doc. 3, pp. 8-9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

**Count 1:** Eighth Amendment claim against the Defendants John/Jane Doe (ICI Superintendents) for deliberate indifference to the present and future health risks to Plaintiff from consuming its juice drinks, which contain ingredients that may produce benzene;

**Count 2:** Eighth Amendment claim against Defendants Baldwin, Godinez, Taylor, and Randle for deliberate indifference to the present and future health risks to Plaintiff from consuming ICI-produced juice drinks, which contain ingredients that may produce benzene;

**Count 3:** Eighth Amendment claim against Defendants Mueller, John/Jane Doe (wardens), and John/Jane Doe (dietary managers) for deliberate indifference to the present and future health risks to Plaintiff from consuming ICI-produced juice drinks, which contain

6

ingredients that may produce benzene;

**Count 4:** Eighth Amendment claim against Defendants Walker and Knauer for deliberate indifference to the present and future health risks to Plaintiff from consuming ICI-produced juice drinks, which contain ingredients that may produce benzene.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.**

As discussed in more detail below, Counts 1, 2, and 3 survive screening and shall receive further review. However, Count 4 does not survive preliminary review and shall be dismissed for failure to state a claim upon which relief may be granted.

## Official Capacity Claims

Plaintiff sues Defendants Baldwin, Mueller, Walker, Knauer, and John/Jane Doe (ICI Superintendents, dietary managers, and wardens) in their individual and official capacities. He is seeking only monetary relief, however, and has not requested injunctive relief. State officials, such as these defendants, are not subject to a claim for money damages in their official capacities. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money

7

damages). Therefore, any claim for damages that survives threshold review may only proceed against these defendants in their individual capacities. All official capacity claims against these defendants shall be dismissed without prejudice.

## Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain and punishment that is grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). An Eighth Amendment claim for unconstitutional conditions of confinement consists of two elements. To satisfy the objective element, a plaintiff is required to show that the conditions denied the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs, such as food, medical care, sanitation, or physical safety. *Rhodes*, 452 U.S. at 347. "An objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (internal quotations and citations omitted). Depending on the severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they cause physical, psychological, or probabilistic harm. *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012).

To satisfy the subjective element of an Eighth Amendment claim, the plaintiff must establish that each defendant acted with a culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Occasional instances of food or water contamination in prison will not support an Eighth Amendment deliberate indifference claim. *See, e.g., McRoy v. Aramark Correctional Servs., Inc.*, 268 F. App'x 479 (7th Cir. 2008) (no deliberate indifference where inmate was served undercooked chicken on one occasion, sour milk on six occasions, and spoiled sandwich meat on three occasions, where inmate was offered replacement items when available, and no further incidents occurred); *Franklin v. True*, 76 F.3d 381 (7th Cir. 1996) (unpublished disposition) (concluding that one instance of food poisoning is insufficient to state conditions-of-confinement claim); *Hadley v. Dobucki*, 59 F.3d 173, 1995 WL 364225 (7th Cir. 1995) (unpublished disposition) (occasional "foreign objects" such as aluminum foil in prison food did not state an Eighth Amendment claim). Likewise, where the health risks from consuming allegedly tainted water are the same for prison inmates and the general population, no

9

Eighth Amendment claim is stated. *See Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (the Constitution does not require a confining institution "to provide a maximally safe environment, one completely free from pollution or safety hazards") (internal citation omitted); *Lieberman v. Budz*, Case No. 03-C-2009, 2007 WL 1810493, at *9 (N.D. Ill. June 19, 2007) (inmate had no cognizable claim for having to wash with and drink allegedly contaminated water from same source as shared by non-prison population). However, where a prisoner's complaint indicates that prison officials were aware of a pattern of ongoing incidents where inmates were injured by contaminated food, yet did nothing to mitigate the risk, a viable deliberate indifference claim may be stated. *See Green v. Beth*, 663 F. App'x 471, 472 (7th Cir. 2016) (district court should not have dismissed claims by plaintiff who described an "ongoing" problem of injuries suffered by inmates from biting into foreign objects in the food served in jail, and lack of action by defendants).

Here, Plaintiff describes symptoms he suffered after consuming juice that was allegedly tainted with benzene, including, but not limited to, hypertension, dizziness, headaches, and an irregular heartbeat. (Doc. 3, p. 5). He also notes that the long-term consumption of this juice may lead to future health problems, such as cancer. (Doc. 3, p. 7). These symptoms and potential future health risks arguably meet the objective requirement of an Eighth Amendment claim.

Few cases have been brought alleging that unsafe levels of benzene may be found in drinks which contain sodium benzoate and ascorbic or other acids. *See,*

*e.g.*, *Gonzalez v. Pepsico, Inc., et al.*, 489 F. Supp. 2d 1233 (D. Kan. 2007) (denying defendants' motion to dismiss); *Lamond v. Pepsico, Inc., et al.*, Case No. CIV 06-3043, 2007 WL 1695401 (D.N.J. June 8, 2007). These cases have not resulted in any definitive rulings on the matter. Analogous claims, based on prisoners' unwitting consumption of drinks sweetened with saccharine (a possible carcinogen) have been rejected because no proof existed that the substance was detrimental to human health, and no present injury had been alleged. *Tripp v. Carter*, No. 99-C-3304, 1999 WL 966099, at *2-3 (N.D. Ill. Oct. 13, 1999) (collecting cases). However, Plaintiff points to documentation of actual harm and risks of harm to humans from ingesting benzene, which may develop from the components in the prison juice products. (Doc. 3, p. 3). He claims to have suffered physical symptoms after consuming the juice and raises a claim for possible future harm due to long-term exposure. (Doc. 3, pp. 3-5, 7-8). Furthermore, Plaintiff claims that he could not avoid the risk posed by juice products for a long period of time because he was unaware of the risk and had no opportunity to avoid the risk by choosing another product. At this early stage of the case, it would be inappropriate to conclude that the ICI-produced juice products did not pose an objectively serious risk of harm to Plaintiff.

The remaining question is whether any of the Defendants had the requisite subjective knowledge of the risk to Plaintiff's and other inmates' health from these products. Awareness of such a risk is necessary to support a claim for deliberate indifference based on a Defendant's failure to take any action to mitigate the risk.

11

### Count 1 – John/Jane Doe ICI Superintendents

According to Plaintiff, the ICI Superintendents have known about the dangers associated with benzene since approximately 1998. (Doc. 3, p. 6). He claims that despite this knowledge, they took no steps to ensure their products were not dangerous. *Id*. Instead, they continued to manufacture and distribute these products to prisoners for many years. *Id*. These allegations support an Eighth Amendment claim at this stage of the case.

Because Plaintiff has identified several distinct sub-groups of John/Jane Does, the Court shall designate Defendants John/Jane Doe (ICI Superintendents) as Unknown Party #1 (John/Jane Doe ICI Superintendents)[1] as this case goes forward.

Count 1 survives review under § 1915A, and shall proceed against Unknown Party #1 (John/Jane Doe ICI Superintendents) in their individual capacities. The current ICI Superintendent shall be added as a party, and service shall be directed to him/her under that title. However, Plaintiff must identify any former ICI Superintendents by name before the Complaint may be served on them.

### Count 2 – IDOC Directors

Plaintiff seeks to hold current and former IDOC Directors, including Director Baldwin and former Directors Godinez, Taylor, and Randle, liable for

---

[1] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the Unknown Party Defendants as follows: Unknown Party #1 (John/Jane Doe ICI superintendents); Unknown Party #2 (John/Jane Doe wardens); and Unknown Party #3 (John/Jane Doe dietary managers). *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

deliberate indifference to a known risk of harm from benzene in the juice drinks served in IDOC prisons. He claims that Defendants Baldwin, Godinez, Taylor, and Randle knew about the risks posed by the possibility of benzene in the drinks, but did nothing to mitigate the risks. (Doc. 3, p. 6).

Plaintiff has sufficiently alleged that Defendants Baldwin, Godinez, Taylor, and Randle knew about the potential danger to inmates from consuming juice containing chemicals that could produce benzene, but took no action. (Doc. 3, p. 6). At this early juncture, he has stated a claim against these defendants for potential liability in their individual capacities. Accordingly, Plaintiff may proceed with his claim for damages in Count 2 against Defendants Baldwin, Godinez, Taylor, and Randle in their individual capacities.

### Count 3 – Wardens and Dietary Managers

Plaintiff claims that Warden Mueller and the Centralia Jane/John Doe Dietary Manager, along with the other John/Jane Doe Wardens and Dietary Managers, knew about the formation of benzene from ingredients found in the prison drink products since 1998 and were also informed of concerns about benzene in drink products by IDOC union employees in 2008. (Doc. 3, pp. 3, 6). Defendants Mueller and the Centralia Jane/John Doe Dietary Manager stopped serving the juice products at some point but resumed the practice after a short time. (Doc. 3, p. 6). Defendant Mueller allegedly reviewed and concurred with the denial of Plaintiff's grievance about this issue. *Id*. Despite their alleged knowledge of the hazards of benzene, these defendants did nothing to mitigate the

risks to inmates from consuming the drinks. *Id*.

At this stage, Plaintiff has met the basic pleading requirements to state a claim against Defendants Mueller, John/Jane Doe (Wardens), and John/Jane Doe (Dietary Managers). As previously explained, the Court shall designate these unknown defendants as Unknown Party #2 (John/Jane Doe Wardens) and Unknown Party #3 (John/Jane Doe Dietary Managers). *See* FED. R. CIV. P. 21. At this time, Count 3 survives review under § 1915A.

### Dismissal of Count 4 – Grievance Officials

Finally, Plaintiff sues Defendant Walker (Centralia grievance officer) and Knauer (A.R.B. official), both of whom reviewed and denied Plaintiff's grievance concerning the alleged dangers of the juices being served at Centralia. However, the Complaint does not allege that either of these defendants had any knowledge of the hazards of consuming benzene or had any involvement in the decisions regarding what beverages would be served in Centralia or other prisons. (Doc. 3, pp. 5-6). Their only role was to review and deny Plaintiff's grievance. *Id*.

A defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091,

14

1100-01 (7th Cir. 1982). The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430. In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

In this case, Plaintiff merely alleges that Defendants Walker and Knauer rejected or denied his grievances that address the misconduct of other prison officials. This does not constitute personal involvement sufficient to sustain a deliberate indifference claim. Therefore, Count 4 against Defendants Walker and Knauer shall be dismissed with prejudice.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against Defendants Unknown Party #1 (John/Jane Doe ICI Superintendents). In this case, the current ICI Superintendent may be served by directing service to him/her under his/her official title, and the Clerk shall be directed to add the current ICI Superintendent as a party. *See* FED. R. CIV. P. 21. However, any previous ICI Superintendents must be identified with particularity before service of the Complaint can be made on them.

15

Count 3 also survives dismissal, but the Complaint does not provide sufficient information to determine which of the Unknown Party #2 (John/Jane Doe Wardens) or Unknown Party #3 (John/Jane Doe Dietary Managers), at which institutions, may be implicated in this claim. Accordingly, no service shall be ordered for these 2 classes of John/Jane Doe Defendants until Plaintiff identifies the individual defendant(s) by name.

Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d at 832. In this case, IDOC Director Baldwin is already named as a Defendant, and he shall be responsible for responding to discovery aimed at identifying these unknown defendants. As well, discovery may be directed to the current ICI Superintendent. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants Unknown Party #1 (John/Jane Doe ICI Superintendents), Unknown Party #2 (John/Jane Doe Wardens), and/or Unknown Party #3 (John/Jane Doe Dietary Managers) are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

**Pending Motion**

Plaintiff's motion to consolidate his case with the pending action in *Trainor*

*v. Baldwin*, Case No. 17-cv-369-DRH-DGW (Doc. 6) shall be **REFERRED** to the United States Magistrate Judge for further consideration.

**Disposition**

The Clerk is **DIRECTED** to designate the Unknown Party Defendants as follows: **UNKNOWN PARTY #1 (John/Jane Doe ICI Superintendents)**; **UNKNOWN PARTY #2 (John/Jane Doe Wardens)**; and **UNKNOWN PARTY #3 (John/Jane Doe Dietary Managers)**. In addition, the Clerk is **DIRECTED** to add as a Defendant the **SUPERINTENDENT of the ILLINOIS CORRECTIONAL INDUSTRIES**.

**IT IS HEREBY ORDERED** that **COUNTS 1, 2,** and **3** survive screening and are subject to further review. This includes **COUNT 1** against Defendants **UNKNOWN PARTY #1 (John/Jane Doe ICI Superintendents),** in their individual capacities; **COUNT 2** against Defendants **BALDWIN, GODINEZ, TAYLOR,** and **RANDLE**, in their individual capacities; and **COUNT 3** against Defendants **MUELLER, UNKNOWN PARTY #2 (John/Jane Doe Wardens)**, and **UNKNOWN PARTY #3 (John/Jane Doe Dietary Managers)**, in their individual capacities.

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **WALKER** and **KNAUER** are **DISMISSED** from this action without prejudice. All claims brought against the remaining Defendants in their

official capacities are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Defendants **BALDWIN, GODINEZ, RANDLE, TAYLOR, MUELLER,** and the **SUPERINTENDENT of the ILLINOIS CORRECTIONAL INDUSTRIES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 3), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on **UNKNOWN PARTY #1 (John/Jane Doe ICI Superintendents)**; **UNKNOWN PARTY #2 (John/Jane Doe Wardens)**; and **UNKNOWN PARTY #3 (John/Jane Doe Dietary Managers)** until such time as

Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendants with particularity and a decision on the Motion to Consolidate Cases (Doc. 6).

Further, this entire matter shall be **REFERRED** to the U.S. Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the

transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.05.17
21:22:34 -05'00'

**United States District Judge**